## The People of the State of Illinois, Defendant in Error, v. Seymour R. Simpson, Plaintiff in Error.

## Gen. No. 21,674.

1.   CRIMINAL LAW, § 423*—*when objections to argument of State's Attorney not considered on review.* Objections to the argument of the State's Attorney in a criminal case cannot be considered on review where such argument does not appear in the record.

2.   CONSPIRACY, § 50*—*when evidence sufficient to sustain verdict in criminal prosecution.* In a prosecution for conspiracy to defraud by means of the confidence game, evidence examined and a verdict of guilty *held* not manifestly against the weight of the evidence.

3.   CRIMINAL LAW, § 570*—*when refusal to instruct jury to find defendant not guilty on quashed counts harmless error.* Where an indictment contains four counts, one of which is quashed and another withdrawn from the jury at the close of all the evidence, it is not reversible error to refuse to instruct the jury to find defendant not guilty on the counts quashed and withdrawn where the court instructs the jury that they can only find defendant guilty on two counts, and he is found guilty only on one of such counts, defendant not being harmed by the action of the court complained of.

4.   CONSPIRACY, § 37*—*when counts in indictment for conspiracy not merged.* A count in an indictment charging conspiracy to commit an offense is not merged with another count charging the commission of the offense, the two counts charging other and different offenses.

5.   CONSPIRACY, § 54*—*when exclusion of evidence on cross-examination harmless error.* In a prosecution for conspiracy, the action of the court in excluding a question put to a witness who had turned State's evidence as to whether he expected a lighter sentence as a result of so doing, although erroneous, is not reversible error as unduly restricting cross-examination, where the court permitted the witness to answer questions as to the witness' expectation of going free and as to whether any one in the State's Attorney's office had told him it would go lighter with him as a result of his action, and where the jury could not have found otherwise under the evidence, the error in such case being harmless.

6.   CRIMINAL LAW, § 372*—*when judgment not in exact accord with verdict not void.* The fact that a judgment in a criminal case is not in exact accord with the verdict is merely an informality and does not render it void, where the verdict is in accord with the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

count under which defendant was convicted and where the punishment fixed by the jury and the sentence imposed are in accordance with the statute for the crime of which defendant was convicted.

Error to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed April 12, 1916.

STEDMAN & SOELKE, for plaintiff in error.

MACLAY HOYNE, for defendant in error.

MR. PRESIDING JUSTICE PAM delivered the opinion of the court.

By this writ of error it is sought to reverse a judgment whereby plaintiff in error (defendant below) was adjudged guilty of the crime of obtaining money by means of the confidence game and required to pay a fine of $1,000 and costs. This judgment was rendered upon a verdict of the jury finding defendant guilty of the crime of conspiracy to obtain money by means of the confidence game, the punishment being fixed by the jury at the aforesaid fine.

The indictment contained four counts: The first charged the crime of extortion; the second, conspiracy to obtain money under false pretenses; the third charged conspiracy to obtain money by means of the confidence game; the fourth, the obtaining of money by means of the confidence game. The first count was quashed, and, with the fourth count, was withdrawn by the court from the consideration of the jury, at the close of all the evidence. One R. H. Hickman was jointly indicted with defendant but never arrested or tried. The subject-matter of each count in the indictment was the obtaining unlawfully, by Hickman and defendant, of the sum of $7 from one Nicholas Gann, a peddler.

The evidence on behalf of the People showed that one Nicholas Gann was a licensed huckster, doing busi-

ness in the City of Chicago; that there were in force
in the City of Chicago at the time in question certain
ordinances concerning weights and measures which
were required to be used by peddlers in making sales;
that the enforcement of these ordinances was under
the control of the city sealer and his deputies; that
these deputies were provided with official badges or
stars, and clothed with the power of arresting viola-
tors of the ordinances in question; that the said Gann,
on the fifth day of October, 1914, was out on the streets
of Chicago peddling potatoes from a wagon; that
shortly after he had made a sale to a housekeeper, us-
ing a peck measure instead of a scale, for the purpose
of determining weight, thereby violating the city or-
dinance, two men stepped up to his wagon, one of
whom was Hickman, who was named as a joint de-
fendant in the indictment, and one Oliver Ashe; that
these men charged the said Gann with the violation of
the city ordinance because he used a peck measure in-
stead of a scale, and ordered Gann to drive to the po-
lice station; that he (Gann) suspected that these men
were not authorized inspectors; that upon Ashe's
showing his star, he was confirmed in that belief be-
cause the star exhibited was a bogus star, and not the
official star then in use. The testimony further showed
that he had been informed that there were bogus in-
spectors threatening peddlers with arrest in order to
make a "shake-down"; that while Gann talked with
Ashe, the latter told him that for $15 he would let him
go; that finally Ashe agreed to take $7, which was all
the money Gann then had; that Gann observed a de-
tective near at hand while talking with Ashe; that he
signaled to the detective to come up; that Hickman
had, up to this time, been following behind, but fled
when he saw the detective approach; that as the detec-
tive came up, Ashe was promptly placed under arrest,
and Hickman made his escape. This testimony was
given by Gann and corroborated by Ashe.

Ernest Griffith, the detective who made the arrest, testified that the man with Ashe at the time he was arrested ran away; that he took Ashe to the station, searched him and took $7 and the star away from him.

The evidence further showed that Ashe was indicted for obtaining money by use of the confidence game; that he plead not guilty to this charge; that subsequently Ashe made a confession implicating the defendant; that thereafter Ashe withdrew his plea of not guilty and entered a plea of guilty to the charge of petit larceny, upon which sentence was deferred and Ashe was released on his own recognizance.

The testimony further showed that defendant, who was a deputy inspector in the city sealer's office, had proposed to Hickman and Ashe that they pose as deputy city sealers for the purpose of making pretended arrests of violators of the city ordinance; that the said Hickman and Ashe agreed to act upon defendant's suggestion, and it was also agreed that whatever moneys were secured on "shake-downs" were to be divided equally among the three, i. e., defendant, Hickman and Ashe; that this arrangement was entered into at a place known as Moffett's; located at 686 North Clark street, which was a pool room, barber shop and cigar stand combined, where Hickman was employed, and a place frequented by the defendant; that defendant suggested that Hickman and Ashe obtain a book containing the correct weights and measures, to show that they were bona fide inspectors; that defendant furnished them with the star in question, and furthermore promised that if trouble ensued they would be taken care of.

The evidence further showed that Ashe and Hickman had, prior to the pretended arrest of Gann, made a "shake-down" on Irving Park boulevard which netted them $10, which sum was divided equally among the three as per agreement.

Ashe further testified that after his arrest he went to see the defendant and was by him taken to the office

of Daniel Cruice, an attorney; and that the defendant there arranged with Mr. Cruice to defend Ashe, and paid Mr. Cruice a retainer.

There was additional testimony by Gann that he saw the defendant in West Pullman while on the streets, and again at his (Gann's) home, and that during one conversation defendant requested him to be careful as to his testimony and not say "anything bad" about him (the defendant), and in the second, defendant asked him not to go to court at all but to leave the city.

On behalf of the defendant, Mr. Cruice testified that he had not been retained by the defendant nor paid any money as a retaining fee, to appear on behalf of Ashe, and had not seen Ashe in the presence of the defendant, at his office. Defendant himself took the witness stand and denied categorically all of the testimony of Ashe. He did admit that when he was in the vicinity he called on Gann and asked him whether or not he knew anything against him, and that Gann replied that he did not know anything. He denied, however, that he had asked Gann not to say "anything bad" against him, and further, that he had asked him not to go to court or to leave town.

John J. Higgins testified that he saw defendant when he met Gann the first time; that he was present during the entire conversation and that he did not hear defendant request Gann not to say "anything bad" against either himself (defendant) or Ashe.

Upon this state of the record, defendant insists that the finding of the jury is contrary to the weight of the evidence, and, furthermore, that the jury were influenced in arriving at their verdict by the conduct of the State's Attorney in commenting upon the testimony of Cruice and also in reading a case to the jury to the effect that the Supreme Court did not favor attorneys taking the witness stand.

The argument of the State's Attorney complained

of is not in the record; moreover, the record is barren of any objection to such acts on the part of the State's Attorney, if they actually did take place, therefore we cannot consider defendant's reference thereto.

In their argument for a reversal, counsel rely upon the claim that the State depended entirely upon the uncorroborated testimony of Ashe, an accomplice. In urging this contention counsel, while recognizing that a conviction may be obtained upon the uncorroborated testimony of an accomplice, insist that the law does not look with favor upon such testimony; that such testimony is subject to grave suspicion and should be acted upon only with the utmost caution. Defendant argues that therefore the verdict, based, as he contends, on the uncorroborated testimony of Ashe, a self-confessed accomplice, cannot be upheld in the face of evidence by the defendant denying in every way the testimony of Ashe, and the contradiction of Ashe on matters "of the most vital materiality" by Mr. Cruice. In support of this argument, counsel comment upon the fact that Ashe had not only admitted his guilt in the case at bar, but had also admitted having been convicted for robbery theretofore; and the further fact that Ashe had a strong inducement to testify falsely because under the facts and circumstances in evidence, he had reason to believe that in return for his turning State's evidence, he would receive immunity from punishment. It is fair to presume that this argument was made not only to the jury but also to the court, in counsels' argument on their motion for a new trial, but apparently without avail, as the jury found the defendant guilty and the court overruled his motion for a new trial.

The jury and court, in arriving at their determination, while believing Mr. Cruice's testimony, may have taken into consideration the fact that Mr. Cruice testified that he had never known Ashe prior to the time he was retained to defend Ashe on the charge of operating a confidence game; that he did know the defendant and

had been retained to defend him on charges arising out of this transaction when before the trial board of the civil service commission, and from these facts may well have arrived at the conclusion that Ashe had been sent to Mr. Cruice by the defendant,—a conclusion that may well have had an important bearing in arriving at a determination as to the defendant's guilt. The jury and the court may also have taken into consideration the further fact that the defendant, in statements to Peter Zimmer, city sealer, and William F. Cluetts, a deputy inspector of weights and measures, had denied knowing Ashe, and that afterwards on the trial admitted he had known him for more than a year. In addition, there were other circumstances which the court and jury may have taken into consideration in arriving at their conclusion, viz., the fact that defendant, although his home was five or six miles distant from Moffett's place, was a frequent visitor there; that in that place Hickman had been employed, and that defendant had had previous business dealings with Hickman. Gann's testimony with reference to the defendant's visiting him and asking him not say "anything bad" against him in court, and on another occasion suggesting that he leave the city, were circumstances properly to be taken into consideration by the jury with reference to the defendant's testimony. We cannot, therefore, look with favor upon defendant's contention that the verdict must have been based entirely upon the uncorroborated testimony of an accomplice. From a careful examination of the facts and circumstances in evidence in this case, we are not only of the opinion that the verdict is not clearly and manifestly against the weight of the evidence, but that the jury were fully warranted in arriving at their conclusion.

Counsel argue that the court erred in not instructing the jury to find the defendant not guilty on the first and fourth counts of the indictment; that the action of the court in withdrawing these counts from the

consideration of the jury was not a compliance with defendant's request, and that the court was without power to take such action. In such contention we cannot concur. The record shows that when the case was submitted to the jury they were told that they could find the defendant guilty on but two counts in the indictment. Defendant was found guilty on but one of these two counts. Therefore we cannot see wherein defendant was harmed by the action of the court.

Several other reasons are urged by defendant for a reversal of the judgment, which involve as a necessary promise that there was a merger of the third count with the fourth count in the indictment. These are argued under points three, four, five and six of defendant's brief. The third count charged a conspiracy to obtain money by means of the confidence game. The fourth count charged the obtaining of money by means of the confidence game. The crime charged in the third count is distinct and separate from that alleged in the fourth. Under the well-settled law in our State, there was no merger of the third and fourth counts in the indictment. This distinction is clearly set forth in *People v. Darr*, 255 Ill. 456, where a similar contention was made, and the court said, p. 462: "A conspiracy to commit a crime is one offense; the commission of the crime is another and different offense," and held that there was no merger. We therefore cannot concur in the argument advanced by defendant on the aforesaid four points.

With reference to defendant's contention that there is a fatal variance between the evidence and the allegations in the indictment, we are of the opinion that this is without merit, as is also his contention that the court erred in refusing to give to the jury instructions submitted by him as to the fourth count in the indictment, which the court withdrew from the consideration of the jury.

Defendant also contends that the court erred in un-

duly restricting the cross-examination of Ashe as to his motive in turning State's evidence. The record upon this point in the case is as follows:

"MR. SOELKE:

"Q. Do you expect to be allowed to go free in consideration of your testifying against Mr. Simpson? A. No, sir.

"Q. Do you expect to have your punishment in this case made lighter than it otherwise would be, by reason of your testifying against Mr. Simpson, now and in payment therefor?"

The court sustained an objection to the latter question. Then came the following question:

"MR. SOELKE:

"Q. Now, has anyone connected with the state's attorney's office told you that if you would testify in this case against Mr. Simpson it would go lighter with you? A. No, sir."

Counsel, in support of their contention that the ruling of the court constituted reversible error, refer us to *Stevens v. People,* 215 Ill. 593. There is, however, a difference between that case and the case at bar. In that case the court allowed no questions to be answered by the witness as to his expectations. In the case at bar, the court did permit the question whether the witness expected to go free entirely in consideration of his testifying, which was answered in the negative. Moreover, there was the question whether the State's Attorney had told him that he would receive a lighter sentence, and this question was answered in the negative. Under these facts and circumstances, we do not think the case cited by counsel is applicable, as we do not think the cross-examination in the case at bar was unduly limited. While under the reasoning in *Stevens v. People, supra,* we think the court should have permitted the question to be answered, yet being of the opinion that under the facts and circumstances in evidence in the case at bar the verdict of the jury could not have been otherwise, even had the question been

answered in the affirmative, such error must be considered harmless. (*People v. Cleminson,* 250 Ill. 135; *People v. Strosnider,* 264 Ill. 434.)

There is the further contention by the defendant, that the judgment does not conform to the verdict of the jury. The jury found the defendant guilty of conspiracy to obtain money by means of the confidence game, while the judgment entered thereon adjudged defendant guilty of the crime of obtaining money by means of the confidence game. The verdict was in accord with the count in the indictment on which defendant was found guilty; the punishment fixed by the jury was the one provided by statute for the crime of which he was found guilty. The sentence imposed was the payment of a fine of $1,000, in accordance with the verdict of the jury. Therefore, the most that can be said is, that the judgment is informal. Such informality, however, does not render the judgment void. *People v. Murphy,* 188 Ill. 144.

Finding no reversible error, the judgment will be affirmed.

*Affirmed.*